IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MARK MELMAN )
)
    Plaintiff, )
)
v. ) Case No. 3:08-cv-1205
)
) JUDGE HAYNES
METROPOLITAN GOVERNMENT )
OF NASHVILLE AND DAVIDSON )
COUNTY )
)
    Defendant. )

## MEMORANDUM

Plaintiff Mark Melman filed this action under the Americans with Disabilities Act, 18 U.S.C. § 12101, et seq (the "ADA"), the Rehabilitation Act of 1973, 29 U.S.C. § 791, et seq. (the "Rehabilitation Act"), and the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, et seq ("THRA"), against his employer Metropolitan Government of Nashville and Davidson County. Plaintiff contends that Defendant discriminated against him based upon a disability by switching Plaintiff from bus driver to bus monitor. Specifically, Plaintiff alleges that Defendant failed to comply with applicable United States Department of Transportation ("DOT") regulations and refused to make a reasonable accommodation of Plaintiff's disability through alternative methods of urine testing. After its initial answer, by leave of Court, Defendant filed an amended answer to Plaintiff's complaint. (Docket Entry No. 17).

Before the Court is Defendant's motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), (Docket Entry No. 9), and memoranda in support thereof, (Docket Entry Nos. 10,

1

20), to which Plaintiff has responded. (Docket Entry No. 15). Defendant's motion asserts in sum: (1) that applicable DOT regulations required Plaintiff's removal from the bus driver position; (2) that Plaintiff was not qualified for the bus driver position; (3) that the accommodation sought by Plaintiff was not reasonable; and (4) that Plaintiff's state law claim fails under Tennessee law because the Defendant did not owe a duty to provide a reasonable accomodation.

Plaintiff responds that the MRO did not comply with DOT regulations when making the medical determination relating to the February 25, 2008 drug screen. Plaintiff disputes that applicable DOT regulations do not permit the accomodation sought. Plaintiff further responds that Defendant was not required to adopt the MRO's medical determination.

## I. <u>Analysis of Complaint</u>[1]

Plaintiff began his employment with the Defendant as a bus driver in 2002. As a condition of employment, Plaintiff was required to submit to random, unannounced drug screens arranged by Defendant in compliance with DOT regulations. Plaintiff was required to submit to such random drug screens in November 2002, April 2005, and February 2008. Plaintiff experienced difficulty providing an adequate urine sample for the April 2005 screen and the collector noted "shy bladder" on the testing form.

On February 25, 2008, Plaintiff was required to provide a urine sample for a random drug screen, but was unable to provide an adequate urine specimen within the time limit provided by DOT regulations. As required by DOT regulations, the collector notified Defendant that Plaintiff was unable to provide an adequate urine sample. Defendant referred Plaintiff to Dr. Mitchell

---

[1] The Court has accepted as true all well-pled factual allegations in Plaintiff's complaint.

2

Wiatrak, a urologist.

On March 4, 2008, a Medical Review Officer ("MRO") determined that Plaintiff lacked a physiological condition under DOT regulations to account for his inability to provide an adequate urine specimen on February 25, 2008. Consequently, the MRO classified Plaintiff's inability to provide the urine sample as a "refusal to test," that is treated as a positive test result under DOT regulations. In making this determination, the MRO did not conduct a personal examination of Plaintiff, nor review Plaintiff's April 2005 drug screen report, nor consider the report subsequently prepared by Dr. Wiatrak on March 6, 2008.

On March 6, 2008, Dr. Wiatrak examined Plaintiff and concluded that he had "shy bladder syndrome by clinical presentation." Dr. Wiatrak classified Plaintiff as having "a medical condition has, or with a high degree of probability could have, precluded the donor from providing a sufficient amount of urine." Dr. Wiatrak's report also stated that he was willing to catheterize Plaintiff in the office if provided the testing kit. On March 11, 2008, Defendant asked Plaintiff to fax Dr. Wiatrak's report to the MRO. On March 25, 2008, Defendant asked Plaintiff to fax the report to its Human Resources Officer.

On April 18, 2008, the Defendant adopted the MRO's decision. In a letter dated May 1, 2008, Defendant notified Plaintiff that he had been placed on administrative leave without pay and was required to attend a drug program. Plaintiff paid for the drug treatment program. On numerous occasions, Plaintiff offered to submit to "any alternative means" of random drug screens, but the Defendant refused. Plaintiff filed a timely appeal, but was removed from the bus driver position and assigned to bus monitor position. A bus monitor position is less prestigious than a bus driver and there is not any opportunity to earn overtime pay.

3

Case 3:08-cv-01205   Document 25   Filed 07/09/09   Page 3 of 8 PageID #: 292

On May 2, 2008, Plaintiff was examined by another urologist, Dr. Robert Faber, who was able to secure a urine sample only by using a catheter. The urine sample was negative. On June 2, 2008, Plaintiff was examined by his personal physician, Dr. Heusinkveld, who was able "only after many hours and attempts . . . to secure a urine sample."

Plaintiff asserts that he suffers from shy bladder syndrome or paruresis. Plaintiff has had problems providing urine specimens throughout his life and experiences similar problems when using public restrooms.

## II. Analysis of Claims

In considering a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), the Court "construe[s] the complaint in the light most favorable to the non-moving party, accept[s] the well-pled factual allegations as true, and determine[s] whether the moving party is entitled to judgment as a matter of law." Barany-Synder v. Weiner, 539 F.3d 327, 331 (6th Cir. 2008) (citation omitted). The Court is not required to accept legal conclusions or unwarranted factual inferences. Id. The motion may only be granted if "plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief." E.E.O.C. v. J.H. Routh Packing Co., 246 F.3d 850, 851 (6th Cir. 2000) (citations omitted).

### A. Federal Discrimination Claims

Plaintiff asserts disability discrimination claims under the ADA and Rehabilitation Act. The ADA provides that covered entities shall not discriminate against a qualified individual because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The Rehabilitation Act prohibits

4

discrimination against an "otherwise qualified handicapped individual, solely by reason of his handicap." Pesterfield v. Tenn.Valley Auth., 941 F.2d 437, 441 (6th Cir. 1991) (citing 29 U.S.C. ¶ 794 and Consolidated Rail Corp. v. Darrone, 465 U.S. 624, 626 (1984)). Claims brought under the ADA and Rehabilitation Act may be analyzed together. Thompson v. Williamson County, Tenn., 219 F.3d 555, 557, n. 3 (6th Cir. 2000). "By statute, the Americans with Disabilities Act standards apply in Rehabilitation Act cases alleging employment discrimination." Mahon v. Crowell, 295 F.3d 585, 589 (6th Cir. 2002) (citation omitted).

"To make out a prima facie employment discrimination case under either Act, a plaintiff must show (1) that she or he is an individual with a disability, (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation, and (3) who was discriminated against solely because of the disability." Id. (citations omitted). "To be 'disabled' for the ADA and the Rehabilitation Act, an individual must (1) have a physical or mental impairment which 'substantially limits' him or her in at least one 'major life activity,' (2) have a record of such an impairment, or (3) be regarded as having such an impairment." Id. (citing 29 U.S.C. § 705(20)(B) and 42 U.S.C. § 12102(2)).

Plaintiff claims that he is "disabled" and has a "record of such impairment." Specifically, for his federal disability discrimination claims, Plaintiff cites as a disability:

> 31. Plaintiff Melman has an impairment as that term is used in the Americans with Disabilities Act.
>
> 32. Plaintiff Melman's impairment (paruresis) effects the major life function of elimination of body waste.
>
> 33. Plaintiff Melman is substantially limited in the major life function of the elimination of bodily waste.

34. At all times relevant hereto, Plaintiff Melman is an individual with a "disability" as that term is defined in Section 3(2) of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102. Plaintiff Melman also has a record of a disability.

35. Plaintiff Melman is a qualified individual with a disability within the meaning of 42 U.S.C. § 12111(8). Plaintiff Melman is an individual, who, with reasonable accomodation, can perform the essential function of providing a sufficient sample for purposes of random drug screens as required by Defendant MNPS.

Defendant's amended answer denies that Plaintiff is disabled. Defendant's motion asserts that Plaintiff not otherwise qualified for the bus driver position, with or without reasonable accommodation, because he cannot comply with mandatory DOT regulations on random drug testing. Under DOT regulations, if a person is unable to provide an adequate urine sample for a required drug test, the MRO has the sole authority to make or change a determination that the inability was caused by a medical condition. 49 C.F.R. § 40.149(c). Here, the MRO determined that Plaintiff did not have a physiological condition which would have precluded him from providing an adequate urine sample, which is treated as a refused drug test and considered a positive test. Upon notification, Defendant was required by DOT regulations to remove Plaintiff from the bus driver position, a "safety sensitive function." 49 C.F.R.§§ 40.23, 382.211. Defendant further asserts that the alternative testing accomodation sought was not permitted by applicable DOT regulations and thus was not reasonable.

Here, Plaintiff has alleged in the complaint that he has an impairment, shy bladder disorder, that substantially limits a major life function, elimination of bodily waste, and that he is otherwise qualified. Determining whether the medical problem alleged in the complaint constitutes a disability or whether Plaintiff is "otherwise qualified" for the bus driver position is

6

not proper at the pleadings stage. See J.H. Routh Packing Co., 246 F.3d at 854 ("[D]etermining whether the seizures described in the complaint constitute a disability is not a proper inquiry at the pleadings stage . . . we must determine only whether the plaintiff 'undoubtedly' can prove no set of facts entitling it to relief, and we must accept as true [that] . . . 'Mr. Polak was a qualified individual with a disability'"). Accepting all facts alleged in the complaint as true and construing all reasonable inferences in Plaintiff's favor, the Court does not conclude that Plaintiff undoubtedly can prove no set of facts that would entitle relief on his federal disability discrimination claims. Accordingly, Defendant's motion for judgment on the pleadings should be denied on Plaintiff's ADA and Rehabilitation Act claims.

## B. State Discrimination Claim

Plaintiff has also pled a violation of the THRA. "The employment-related part of the THRA does not expressly apply to claims of discrimination based upon a disability. Instead, an employee is protected from an adverse employment decision based upon disability under the Tennessee Handicap Act ("THA")." Adams v. TRW Automotive U.S. LLC., No. 3:03-1240, 2005 WL 1862302, *18 (M.D. Tenn. July 22, 2005) (quoting Perlberg v. Brencor Asset Mgmt., 63 S.W.3d 390, 394 (Tenn. Ct. App. 2001)). The THA prohibits workplace discrimination based upon an employee's disability and provides, in pertinent part:

> There shall be no discrimination in the hiring, firing and other terms and conditions of employment . . . of any private employer against any applicant for employment based solely upon any physical, mental or visual handicap of the applicant, unless such handicap to some degree prevents the applicant from performing the duties required by the employment . . . [.]

Tenn. Code Ann. § 8-50-103(b). Further, the THA "embodies the definitions and remedies provided by the Tennessee Human Rights Act ('THRA')." Barnes v. Goodyear Tire & Rubber

7

Co., 48 S.W.3d 698, 705 (Tenn. 2000).

Plaintiff bases his state disability discrimination claim entirely on Defendant's failure to provide a reasonable accommodation. As a matter of law, an employer is not required to provide a reasonable accommodation under the THA. Roberson v. Cendant Travel Serv., Inc., 252 F.Supp.2d 573, 583 (M.D. Tenn. 2002) (holding that the elements of the THA "do not include a 'reasonable accommodation' component"). See also Adams, 2005 WL 1862302 at * 20. As the Sixth Circuit noted, "[a] determination that an accommodation is required for the employee to perform the functions of the job ends the inquiry under Tennessee law, but does not do so under the ADA." Workman v. Frito-Lay, Inc., 165 F.3d 460, 468 n.9 (6th Cir. 1999). Thus, Plaintiff's assertion that Defendant violated the THRA by failing to provide a reasonable accommodation is without merit. Accordingly, the Defendant's motion for judgment on the pleadings should be granted on Plaintiff's THRA claim.

### III. Conclusion

Defendant's motion for judgment on the pleadings (Docket Entry No. 9) should be denied as to Plaintiff's ADA and Rehabilitation Act claims, but granted as to Plaintiff's THRA claim.

An appropriate Order is filed herewith.

Entered on this the ___7th___ day of July, 2009.

WILLIAM J. HAYNES, JR.
United States District Judge